24 C.C.P.A. (Patents)

### TOMLIN v. DUNLAP.

Patent Appeal No. 3792.

Court of Customs and Patent Appeals.

March 29, 1937.

John R. Tomlin, of Washington, D. C., and Philipp, Sawyer, Rice & Kennedy, of New York City (Cleon J. Sawyer, of New York City, of counsel), for appellant.

Carl S. Lloyd, of Chicago, Ill., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences awarding to appellee priority of invention as to all the counts involved, numbered 1 to 9, inclusive.

Count 1 is illustrative of the counts in issue and reads as follows: "1. The method of joining the webs of successive rolls of paper supplying a printing press, which consists in bringing a new roll having dry

adhesive applied to the web thereof up to desired speed, moistening the adhesive while said new roll is rotating, and producing pressure between said new roll and the web proceeding from an expiring roll, whereby the adhesive is caused to adhere to the expiring web thus connecting the new web thereto without stopping the press."

The involved invention is concisely described in the decision of the Board of Appeals as follows: "The issue relates to alleged improvements in printing machinery, and more particularly to a method of introducing a new supply of paper in roll form to a press upon exhaustion of the previous supply. The method claimed involves the application to the roll to be added of an adhesive in dry form, bringing the roll up to a peripheral speed corresponding to that of the web being printed, moistening the adhesive and producing pressure between the roll thus treated and the web to cause the moistened adhesive to adhere to the web passing through the press and be threaded in turn there through. This operation is designed to take place without stopping the press, and preferably at normal printing speed."

Both parties took testimony. The only question brought here for review is whether the Board of Appeals erred in affirming the decision of the Examiner of Interferences that, upon the weight of the evidence, appellee was entitled to an award of priority of invention.

The interference arises between two applications for patent; that of appellant filed February 17, 1932, Serial No. 593,-447, and appellee's application filed August 24, 1931, Serial No. 559,112. Appellant is therefore the junior party and the burden was upon him to establish priority by a preponderance of evidence.

The interference was originally declared on October 18, 1932, and at that time involved only counts 1 and 2. On November 18, 1932, appellant filed his preliminary statement with respect to said counts 1 and 2 and alleged that he conceived the invention "on, about or before June 1, 1931, and on or about June 1, 1931, disclosed to others the invention of said counts." He further stated in said preliminary statement: "There has been no reduction to practice of the invention other than filing applications for patents, and there has been no commercial use."

On January 4, 1933, appellant amended his preliminary statement, the only modification of his original statement being the allegation that he conceived the invention "on or about June 1, 1931," instead of "on, about or before June 1, 1931," as set out in his original statement.

Thereafter appellant copied ten claims from appellee's application and moved to add the same as additional counts of the interference. This motion was not opposed by appellee. Appellant also gave notice that at the final hearing he would refer to and use as evidence a patent issued to him on April 18, 1933, No. 1,904,571, and the original application and file wrapper in connection therewith. After various interlocutory proceedings, not material here, appellant's motion to add counts was allowed in part, and the interference was redeclared on February 2, 1934, upon the counts now before us.

On January 24, 1934, appellant filed a motion to amend his last preliminary statement as to counts 1 and 2, setting up the same dates of conception and reduction to practice as were later included in his preliminary statement with respect to the added counts of the interference, which dates are hereinafter set forth. He further moved that decision on this motion be postponed until final hearing on priority. On March 1, 1934, the Examiner of Interferences postponed consideration of the motion until final hearing.

On February 20, 1934, appellant filed a preliminary statement as to counts 3, 4, and 6 to 9, inclusive, and in this statement alleged conception and disclosure to others of the invention embraced in said added counts on or about March 7, 1931, a written description made on August 18, 1931, and reduction to practice on September 3, 1931. Said preliminary statement made no reference to count 5.

Upon final hearing, the Examiner of Interferences denied appellant's motion to amend his preliminary statement as to counts 1 and 2.

Upon appeal to the board from the examiner's award of priority to appellee, error was assigned in denying said motion to amend. While the board recited this motion to amend and its denial, no express ruling was made thereon, but there was a general affirmance of the decision of the Examiner of Interferences. Upon appeal to this court, no reference is

made to this motion or its denial in appellant's reasons of appeal, and therefore no question of error with respect to it is presented to us.

The Examiner of Interferences in his decision awarding priority to appellee held that, inasmuch as appellant had filed no preliminary statement as to count 5, judgment against him on this count must be entered, regardless of the evidence produced. In appellant's appeal to the board, no error · was assigned with respect to this ruling on count 5; the board made no express reference to it and no error is assigned here in appellant's reasons of appeal; therefore, that question is not before us, although appellant's reasons of appeal appear to embrace all of the counts.

Before us appellant in his brief concedes that, upon the record, appellee is entitled to a date of conception as to all of the involved counts as of June 27, 1931, and constructive reduction to practice on August 24, 1931. In view of our conclusions hereinafter stated, and in view of such concession by appellant, it will be unnecessary to consider appellee's proofs in the case.

With respect to appellant's proofs, the Examiner of Interferences found that appellant's patent, No. 1,904,571, granted on an application filed prior to the conception date claimed by appellee in his preliminary statement, does not disclose the invention here involved, and stated with respect thereto as follows: "Tomlin has obtained a patent (1,904,571) granted on an application filed prior to the conception date of either party and disclosing every feature of the present counts except that instead of spraying a liquid solvent on dry adhesive, a liquid glue is sprayed onto the paper. The drawings of Tomlin's patent and application are identical. Since the counts have been held allowable over this patent it is clear that this use of water on dry glue, as distinguished from using wet glue is the sole inventive feature and that Tomlin's case turns on when he conceived and developed this idea."

Before us appellant does not challenge the accuracy of this statement, and he depends wholly upon the evidence produced by him to establish priority of invention.

Upon the evidence produced, the Examiner of Interferences held that appellant had failed to establish conception of the invention prior to the dates accorded to appellee for conception, and that, even if appellant should be accorded an earlier date of conception, he was lacking in diligence in reducing the invention to practice at the time appellee entered the field.

The Board of Appeals concurred with the examiner in holding that appellant had not established conception of the invention prior to the date for conception which appellant conceded appellee had established. The board did not expressly pass upon the question of diligence referred to by the examiner.

The entire case turns upon the probative weight that should be given to the testimony in behalf of appellant. The Examiner of Interferences in his decision stated that the only documentary evidence produced unequivocally referring to the use of water on dry glue, instead of the use of liquid glue, is the order for the preparation of appellant's application, which order is dated August 18, 1931, nearly two months after appellee's conception of the invention, and only six days before appellee's filing date. Upon an examination of the record we find this to be true.

There are in the record certain other documentary evidence and physical exhibits, but none of these disclose the invention here involved, nor do any of them have any connection with the invention here considered other than that they are connected with certain oral testimony on behalf of appellant.

As stated by the Examiner of Interferences, the use of water on dry glue, as distinguished from the use of wet glue, is the sole inventive feature here involved. This water is sprayed on dry adhesive, previously applied upon a roll of paper, by means of valves shown in appellant's prior patent. However, the valves in the patent are used for the purpose of spraying wet glue or other adhesive material on to the roll of paper. In other words, the only difference between appellant's patent and the invention here involved is the use of the valves for spraying water on dry adhesive material previously applied to the paper, instead of spraying wet glue through said valves.

Therefore, appellant's case depends wholly upon oral testimony given more than three years after the events testified to by appellant's witnesses, and such testimony is dependent wholly upon the recollection of the witnesses.

It appears that appellant, who is a patent attorney, was, from December, 1927, until February 15, 1933, executive engineer of R. Hoe & Co., a large manufacturer of printing presses, and that all of the other witnesses on behalf of appellant are present or former employees of said company.

Appellant testified positively that he conceived the invention and disclosed it to one Lundquist, engineer in charge of the "Research and Development Department," and to one Hezel, a draftsman. He fixed the date by reference to certain drawings, dated March 7, 1931, one of which drawings is of a valve "used for depositing either glue or solvent." In other words, there is nothing in said drawings disclosing this invention, but appellant fixes his conception of the invention by the date of the drawings. He testified that upon seeing them he told Lundquist, in the presence of Hezel, that " * * * if glue, due to its viscosity, was so difficult to deposit, that I had definitely given thought to applying a solvent, water or any other solvent, and this valve in which a piston was employed definitely caused my mind to shift to the perfection of an idea for depositing either water or solvent on the terminal of a roll of paper." He further stated:

"Q. 20. With this solvent as conceived by you at that time for use with this piston valve, how did you propose to use the solvent? A. I proposed to use it precisely as we would glue, the only difference being the solvent being more mobile than glue, it would be less difficult to deposit."

Appellant further testified that he also disclosed his conception to other employees of the Hoe Company, viz., Stanley Myers, Louis A. Masson, Albert H. Jung, and Albert J. Horton.

Before further considering the testimony of appellant, we will briefly consider the testimony of the other witnesses. Mr. Hezel did not testify. The witness Lundquist testified, with reference to appellant's claimed disclosure, as follows:

"Q. 11. Did you have any conversation with Mr. Tomlin, the inventor of the patent in interference, at the time of making this drawing of March 7th? A. Yes; at that time and *previous to that time* Mr. Tomlin had disclosed to me his idea of development of a valve for *either glue or water or other solvent*." (Italics ours.)

It thus appears that the witness Lundquist testified to a date of disclosure to him antedating the time of conception positively testified to by appellant.

The witness testified further that he discussed matters relating to his department with appellant almost every day; that many drawings were made of many experimental devices, and yet he was positive from his own recollection that appellant disclosed the invention to him on March 7, 1931, and even before that date. Upon this point he testified on cross-examination as follows:

"XQ. 119. Do you mean to tell us after this length of time you can tell what date it was, three years ago, when you heard Mr. Tomlin mention the use of a solvent to you? A. Yes, I believe so, because we were in very frequent consultation on the subject."

It would seem obvious that the fact that appellant and witness had frequent consultations on the subject would not aid the witness in fixing the exact date of appellant's disclosure.

Conceding the intention of the witness to testify accurately, it is apparent that little weight should be given his testimony with respect to the time of appellant's disclosure to him of the invention.

We find nothing in Masson's testimony tending to corroborate appellant's testimony that he conceived the invention and disclosed it to others prior to June 27, 1931, appellee's date of conception.

The witness Myers testified to a disclosure of the invention to him by appellant after the valve was made pursuant to the drawing of March 7, 1931. As to the date of such disclosure he testified as follows:

"Q. 10. Can you fix the date, approximately, when you had this conversation with Mr. Tomlin? A. I cannot give you the exact date of it, but I know that it was very soon after the valve was made up, because it was after the first test had been made they found they could not get the glue out fast enough."

Upon cross-examination, the witness testified as follows:

"XQ. 42. Just noticing these tickets, work tickets, representing work done by Mr. Kovach, which bear dates running from March 11, 1931—the last one I see is July 1st, 1931—you think it might have been shortly after July 1st that you dis-

cussed this matter with Mr. Tomlin? A. I would not say July, because I don't know what date it would be; I know it was after the first test on that first valve."

The witness Jung was employed to design glue valves for use in a web replenishing machine. He testified that certain sketches, which are in the record as exhibits, were made by him in April, 1931, and that the valves shown in these sketches were to be used for "both glue and water." He further testified that during the time he made these sketches appellant suggested to him "that we spray water with those valves." The witness fixes the time of this disclosure with reference to his stay in a hospital, stating that the disclosure was prior to his going to the hospital on April 20, 1931.

We find nothing in the testimony of the witness Horton tending to corroborate appellant's testimony that he conceived the invention prior to June 27, 1931, the date conceded to appellee for conception.

With respect to appellant's testimony, we would observe that in his preliminary statement with respect to counts 1 and 2, he alleged that he conceived the invention on or about June 1, 1931, and that there was no actual reduction to practice prior to his filing date, while his testimony is positive that he conceived and disclosed it on March 7, 1931, and that it was actually reduced to practice in September, 1931, and that he saw the apparatus successfully operated about ten times, using the method embraced in the involved counts. We do not refer to this as intimating that appellant was not honestly of the opinion on January 4, 1933, the date of said preliminary statement, that he conceived the invention on or about June 1, 1931, or that he was not likewise honestly of the opinion on February 20, 1934, that he conceived it on or about March 7, 1931, and that it was actually reduced to practice on or about September 3, 1931. Appellant explains the discrepancy in the statements by stating that the first preliminary statements were made wholly upon his own recollection after consulting with the witness Horton, while his last preliminary statement was made after refreshing his memory by conversations with the witnesses Lundquist and Myers. We think

it proper to observe that appellant had nothing to gain by alleging in his last preliminary statement a date of conception earlier than the date alleged in his first statement, for either date, if established, would have antedated the date of conception of the invention by appellee. We refer to this matter only for the purpose of calling attention to the fact that the recollection of appellant was not clear as to dates, as might be expected after a lapse of three years where there were no records, prior to August 18, 1931, that are positively identified with the invention here involved.

We would further observe that there were drawings made and glue valves produced during a period from March, 1931, until after June 27, 1931, and the disclosure of the invention by appellant might have been before or after June 27, 1931, and appellant and his witnesses may have been mistaken in the dates of disclosure testified to by them.

We have not attempted to analyze in this opinion all of the testimony in the case, but after a careful examination of the entire record we are inclined to the opinion that the Patent Office tribunals rightly found that appellant had not established a date of conception of the invention prior to June 27, 1931, and in any event we cannot find that the concurring decisions of the Patent Office tribunals upon this point were manifestly wrong. Under the well-established rule, it would be necessary for us so to find in order to reverse the decision of the Board of Appeals in this case.

Inasmuch as we must conclude from the record that appellee was the first to conceive and disclose the invention, and was diligent in reducing it to practice by filing his application for a patent, it is unnecessary for us to consider actual reduction to practice by either appellant or appellee.

For the reasons stated herein, the decision of the Board of Appeals is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate in this decision.